UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL COHEN,<br><br>    Plaintiff,<br><br>  v.<br><br>SANDRA ALFARO,<br><br>    Defendant. | **CASE No. 1:17-cv-00191-MJS (PC)**<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**CLERK TO TERMINATE PEREZ, FAROOQ AND YANG FROM THE DOCKET**<br><br>**THIRTY (30) DAY DEADLINE** |

    Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. He filed his complaint on January 27, 2017 in the United State District Court for the Central District of California, Case Number 2:17-cv-00684. (ECF No. 1.) On February 7, 2017, the Court severed Claims One, Two, Three and Four against North Kern State Prison Warden Sandra Alfaro, Chief Medical Executive Aldukwe N. Odeluga, and Dr. S. Josh Manavi from that action and transferred them to this Court. (ECF No. 6.)

    The complaint contains additional claims against California Institute for Men Warden Tim Perez, Chief Medical Officer Muhammad Farooq, and Dr. Bahua Yang. However, those claims remain pending in Case No. 2:17-cv-00684 and are not before

the undersigned. Accordingly, the Clerk of Court will be directed to terminate Perez, Farooq, and Yang from the docket in this case.

Plaintiff's complaint is before the Court for screening.

**I.     Screening Requirement**

Plaintiff was not incarcerated at the time this action was filed. Nonetheless, the in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.    Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere

possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**III.     Plaintiff's Allegations**

Plaintiff complains of acts that occurred at North Kern State Prison ("NKSP"). He names the following defendants in their individual and official capacities: Warden Sandra Alfaro, Chief Medical Executive Aldukwe N. Odeluga, and Dr. S. Josh Manavi. He also names Defendant Does 1-21.

His allegations may be summarized essentially as follows:

On January 14, 2014, while in the custody of the Los Angeles County Jail, Plaintiff underwent facial reconstruction surgery at the Los Angeles County Medical Center. On April 15, 2014, Plaintiff was diagnosed with entropion to his lower left eyelid, a surgical complication that causes the eyelid to turn inward and the eyelid and eyelashes to irritate the eye. Plaintiff experienced pain, redness, discomfort, irritation, discharge, and tearing in the left eye, as well as pain in the left eye socket and left cranial area.

On May 8, 2014, Plaintiff was transferred to North Kern State Prison with this medical complication unresolved. On May 15, 2014, he was evaluated by non-party Dr. Le. Dr. Le took a detailed medical history and ordered Plaintiff's medical records. He also began the process to refer Plaintiff out for treatment of the entropion.

On May 22, 2014, Plaintiff was seen in consultation by non-party Dr. Yaplee at Triangle Eye Institute in Delano, California. On May 29, 2014, Dr. Yaplee recommended referral to an ocular surgeon.

On June 19, 2014, Plaintiff was evaluated via telemedicine by non-party Dr. Kitt, an Ear, Nose, and Throat specialist. Dr. Kitt recommended referral to an ocular plastics surgeon.

On July 23, 2014, Plaintiff was seen in consultation by non-party plastic surgeon Dr. Freeman. Dr. Freeman recommended that Plaintiff be referred back to Los Angeles County for correction of the entropion.

On August 6, 2014, Plaintiff was seen by his primary care physician, Defendant Dr. Manavi. Dr. Manavi told Plaintiff, "Your referral to LAC+USC for corrective surgery was denied" and "You should speak with a lawyer." Plaintiff believes Defendant Odeluga "and or Chief Medical Officer Doe 1 and or Does 2 through Does 4, participated in and denied the referral ordered by Dr. Freeman . . . ."

On August 8, 2014, Plaintiff was transferred to California Institution for Men. He eventually underwent surgical correction of the entropion at Loma Linda University Medical Center on April 25, 2015. Approximately two weeks later, the entropion reoccurred. Plaintiff underwent two additional corrective surgeries. Each time, the entropion reoccurred. Plaintiff was released from custody on January 29, 2016, three days following his most recent entropion surgery. Although further surgery has been recommended, Plaintiff is financially unable to proceed.

Plaintiff claims violations of this Eighth and Fourteenth Amendment rights to adequate medical care, and brings state law claims for professional negligence and negligent infliction of emotional distress. He seeks monetary relief and a declaration that his rights were violated.

**IV. Analysis**

**A. Official Capacity Claims**

Plaintiff names Defendants in both their official and individual capacities.

To the extent Plaintiff seeks damages against Defendants in their official capacities, his claims are barred the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985) (Eleventh Amendment immunity from damages in federal court action against state remains in effect when state officials are sued for damages in their official capacity). However, the Eleventh Amendment "does not bar actions for declaratory or injunctive relief brought against state officials in their official capacity." Austin v. State Indus. Ins. Sys., 939 F.2d 676, 680 (9th Cir. 1991). Here, Plaintiff has requested declaratory relief. However, he merely requests a declaration that his rights were violated. Because his claims for damages necessarily entail a determination on

4

these issues, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005). The request for declaratory relief will be dismissed, leaving only Plaintiff's claim for damages. Again, Plaintiff may not seek damages from Defendants in their official capacities.

Additionally, official capacity claims must allege that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). Plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992). Here, Plaintiff identifies no policy or custom associated with the violation.

Plaintiff's official capacity claims will be dismissed.

**B.     Linkage**

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's complaint does not state any facts regarding Defendant Alfaro, other than that she was the Warden of NKSP. This is insufficient to state a claim under section

1983. Plaintiff must allege facts to show that this Defendant participated in the violation or knew of the violation but failed to act. The mere fact that Plaintiff's complaints were well-documented is insufficient to show that Defendant Alfaro was aware of them. Claims against Defendant Alfaro will be dismissed. Plaintiff will be given leave to amend.

Plaintiff also does not state facts to link Defendant Odeluga to a constitutional violation. Plaintiff believes Odeluga was responsible for the decision to deny him a treatment referral. However, the complaint states no factual basis for this belief. Claims against Defendant Odeluga will be dismissed. Plaintiff will be given leave to amend.

### C.    Doe Defendants

The use of Doe defendants generally is disfavored. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). Nevertheless, under certain circumstances, Plaintiff may, be given the opportunity to identify unknown defendants through discovery. Id. Before Plaintiff may engage in discovery as to the unknown defendants, he first must link each of them to a constitutional violation. He must address each defendant separately, i.e., Doe 1, Doe 2, Doe 3, etc., and must set forth facts describing how each Doe defendant personally participated in the violation of his constitutional rights. He may not simply allege liability on the part of a group of Defendants.

Here, Plaintiff suggests that "Chief Medical Officer Doe 1 and or Does 2 through Does 4" were responsible for denying his treatment referral. As with Odeluga, however, Plaintiff states no facts to support his belief. He therefore fails to provide facts to link these Does to a constitutional violation. He will be given leave to amend.

### D.    Eighth Amendment

In his first and third causes of action, Plaintiff alleges that Defendants denied and delayed medical care, and failed to provide adequate and proper treatment. Although listed as two separate causes of action, they are both predicated on the same fact: the denial of a referral for treatment of the entropion. This appears to be a claim for Eighth Amendment violations.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits deliberate indifference to the serious medical needs of prisoners. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A claim of medical indifference requires (1) a serious medical need, and (2) a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060a; Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Delay which does not cause harm is insufficient to state a claim of deliberate medical indifference. Shapley, 766 F.2d at 407 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson, 290 F.3d at 1188). Mere indifference, negligence, or medical malpractice is not sufficient to support the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 87, 105-06 (1976)). A prisoner can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment for reasons unrelated to the prisoner's medical needs. See Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992); Estelle, 429 U.S. at 105.

Plaintiff's allegations are sufficient to state a serious medical need. Jett, 439 F.3d at 1096 (a "serious medical need" may be shown by demonstrating that "failure to treat a

7

prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'"); McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

However, Plaintiff has failed to show that any Defendants acted with deliberate indifference. To be sure, the decision to deny treatment previously recommended by a specialist is sufficient to allege deliberate indifference at the pleading stage. However, Plaintiff has failed to present facts to suggest that any of the named Defendants were responsible for the decision to deny his treatment referral. As stated above, Plaintiff fails to link Defendants Alfaro, Odeluga, or any of the Doe Defendants to the decision to deny his treatment. Furthermore, nothing in the complaint suggests that Manavi was responsible for this decision. To the contrary, Manavi's suggestion that Plaintiff speak with a lawyer suggests that Manavi was sympathetic to Plaintiff's need but that the determination was out of his hands. Absent further facts, Plaintiff fails to state an Eighth Amendment claim against these Defendants.

He will be given leave to amend.

### E. Fourteenth Amendment

Plaintiff states his intent to bring a claim under the Fourteenth Amendment. However, the nature of this claim is unclear. As stated, the only allegation is that Plaintiff was denied a referral for treatment of his entropion. This claim would appear to be cognizable, if at all, under the Eighth Amendment, not the Fourteenth Amendment.

Accordingly, this claim will be dismissed. Plaintiff will be given leave to amend.

### F. State Law Claims

Plaintiff brings claims for professional negligence and negligent infliction of emotional distress.

The Court may exercise supplemental jurisdiction over state law claims in any civil action in which it has original jurisdiction, if the state law claims form part of the same case or controversy. 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Furthermore, to bring a tort claim under California law, Plaintiff must allege compliance with the California Tort Claims Act ("CTCA"). Under the CTCA, a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board ("VCGCB") within six months of accrual of the action. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1240 (2004).

Here, Plaintiff has not alleged a cognizable federal claim. Accordingly, the Court will not exercise supplemental jurisdiction over Plaintiff's state law claims. The Court will provide Plaintiff with the legal standards applicable to what appear to be his intended claims, in the event he chooses to amend.

A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d). "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting

McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)). For claims based on medical malpractice, defendant has a duty "to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise." Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999).

"A cause of action for negligent infliction of emotional distress requires that a plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress." Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004).

**V.     Conclusion and Order**

Plaintiff's complaint does not state a cognizable claim for relief. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First

Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk of Court shall terminate Tim Perez, Muhammad Farooq, and Bahua Yang from the docket in this action;
2. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted;
3. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint, filed January 27, 2017;
4. Within thirty (30) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and
5. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to comply with a court order and failure to state a claim, subject to the "three strikes" provision set forth in in 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:   February 14, 2017           /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE