UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL COHEN,<br><br>    Plaintiff,<br><br>v.<br><br>SANDRA ALFARO, et al.,<br><br>    Defendants. | CASE No. 1:17-cv-00191-MJS (PC)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 14)**<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 11.) No other parties have appeared.

Plaintiff filed his initial complaint on January 27, 2017. (ECF No. 1.) On February 15, 2017, the Court screened and dismissed with leave to amend Plaintiff's original complaint. (ECF No. 10.)

Plaintiff's amended complaint ("FAC") is now before the Court for screening. (ECF No. 14.)

**I.    Screening Requirement**

Plaintiff was not incarcerated at the time this action was filed. Nonetheless, the in forma pauperis statute provides, "[n]otwithstanding any filing fee, or any portion thereof,

that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) That a right secured by the Constitution or laws of the United States was violated; and (2) That the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

Plaintiff complains of acts that occurred at North Kern State Prison ("NKSP"). He names the following defendants in their individual capacities: Warden Sandra Alfaro,

2

Chief Medical Executive Aldukwe N. Odeluga, and Dr. S. Josh Manavi. He also names Defendant Does 1-3.

Plaintiff's allegations may be summarized essentially as follows:

On January 14, 2014, while in the custody of the Los Angeles County Jail, Plaintiff underwent facial reconstruction surgery at Los Angeles County Medical Center. On April 15, 2014, Plaintiff was diagnosed with entropion to his lower left eyelid, a surgical complication that causes the eyelid to turn inward and the eyelid and eyelashes to irritate the eye. Plaintiff experienced pain, redness, discomfort, irritation, discharge, and tearing in the left eye, as well as pain in the left eye socket and left cranial area.

On May 8, 2014, Plaintiff was transferred to NKSP with his entropion unresolved. On May 15, 2014, he was evaluated by non-party Dr. Le. Dr. Le recorded a detailed medical history and ordered Plaintiff's medical records. He also began the process of referring Plaintiff for treatment of the entropion.

On May 22, 2014, Plaintiff was seen in consultation by non-party Dr. Yaplee at Triangle Eye Institute in Delano, California. On May 29, 2014, Dr. Yaplee recommended referral to an ocular surgeon.

On June 19, 2014, Plaintiff was evaluated via telemedicine by non-party Dr. Kitt, an otolaryngologist. Dr. Kitt recommended referral to an ocular plastics surgeon.

On July 23, 2014, Plaintiff was seen in consultation by non-party plastic surgeon Dr. Freeman. Dr. Freeman recommended that Plaintiff be referred back to Los Angeles County+USC Medical Center ("LAC+USC") for correction of the entropion.

On August 6, 2014, Plaintiff was seen by his primary care physician, Defendant Dr. Manavi. Manavi told Plaintiff, "Your referral to LAC+USC for corrective surgery was denied," that "LAC+USC is not a contract hospital with [NKSP]," and "You should speak with a lawyer." Plaintiff believes Defendants Odeluga and Does 1, 2, and 3 participated in and denied the referral ordered by Dr. Freeman.

On August 8, 2014, Plaintiff was transferred to California Institution for Men in Chino, California. On March 23, 2015, Plaintiff was taken to Riverside County Medical

3

Center ("RCMC") to consult with ophthalmologists there. Physicians at RCMC referred Plaintiff to an ocular plastics specialist at Loma Linda University Medical Center, where he underwent surgical correction of the entropion on April 25, 2015. Approximately two weeks later, the entropion reoccurred. Plaintiff underwent two additional corrective surgeries. Each time, the entropion reoccurred. Plaintiff was released from custody on January 29, 2016, three days following his most recent entropion surgery. Although further surgery has been recommended, Plaintiff is financially unable to proceed. He continues to suffer from pain in his affected eye due to the entropion, including "irritation, redness, tearing and discharge."

Plaintiff brings medical indifference claims for violations of his Eighth Amendment rights as well as state law claims for professional negligence and negligent and intentional infliction of emotional distress. He seeks monetary relief and a declaration that his rights were violated.

**IV. Analysis**

**A. Linkage**

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cty., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's FAC does not state any facts regarding Defendant Alfaro, other than that she was the Warden of NKSP. As the Court noted in its first screening order, ECF No. 10, this is insufficient to state a claim under § 1983. Here, Plaintiff simply makes conclusory allegations. He states, for example, that because Defendant Alfaro was Warden of NKSP, Plaintiff was under Defendant Alfaro's "direct care" for "all of Plaintiff's personal needs," and that this "established a causal relationship or connection with Plaintiff." Such allegations are insufficient to state a claim. Plaintiff must allege facts to show that Defendant Alfaro participated in the violation or knew of the violation but failed to act. The mere fact that Defendant Alfaro serves as the Warden of NKSP or that Plaintiff's complaints were well-documented is insufficient to show that Defendant Alfaro was aware of them. Plaintiff was previously given leave to amend with respect to Defendant Alfaro, but he has failed to cure the deficiencies noted by the Court. Plaintiff's claims against Defendant Alfaro will be dismissed without prejudice.

Plaintiff also does not state facts to link Defendant Odeluga to a constitutional violation. Plaintiff believes Odeluga was responsible for the decision to deny him a treatment referral. However, his FAC states no factual basis for this belief. Claims against Defendant Odeluga will be dismissed and Plaintiff will be given leave to amend.

If Plaintiff wishes to proceed against these latter Defendants, he must allege **specific facts** to support his belief that they were aware of his medical need and involved in the denial of his care. Conclusory allegations regarding deliberate indifference or the defendants' supervisory roles will not suffice.

**B. Doe Defendants**

Plaintiff lists three Doe Defendants in his FAC. The use of Doe defendants is generally disfavored. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). Nevertheless, under certain circumstances, plaintiffs may be given the opportunity to identify unknown defendants through discovery. Gillespie, 629 E.2d at 642. Before a plaintiff may engage

in discovery as to unknown defendants, however, he or she must first link each of them to a constitutional violation.

Although Plaintiff addresses each Doe Defendant separately, he fails to set forth facts describing how each Doe Defendant personally participated in the violation of his constitutional rights. Instead, Plaintiff merely states that "Chief Medical Officer Doe 1, and NKSP Medical Admin Doe 2, and NKSP Medical Admin Doe 3" were responsible for denying his treatment referral. As with Defendant Odeluga, however, Plaintiff states no facts to support this belief. He therefore fails to provide sufficient facts to link these Doe Defendants to a constitutional violation.

Plaintiff was previously given leave to amend. He listed twenty one Doe Defendants in his original complaint, ECF No. 1, but lists only three such Doe Defendants in his FAC. The Court will give Plaintiff leave to amend, emphasizing the requirement, noted above, that Plaintiff link all Doe Defendants personally to a constitutional violation.

### C. Eighth Amendment

In his first cause of action, Plaintiff alleges Defendants violated his rights by "denying and delaying [his] medical care." Similarly, in his fourth cause of action, Plaintiff alleges Defendants failed to provide "adequate and proper medical care." Although listed as two separate causes of action, these are both predicated on the same fact: the denial of a referral for treatment of Plaintiff's entropion. Plaintiff alleges that Defendants' actions giving rise to his first and fourth causes of action are violations of "Plaintiff's right to be free of cruel and unusual punishment." The Court thus proceeds on the assumption that these are claims for Eighth Amendment violations.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits deliberate indifference to the serious medical needs of prisoners. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A claim of medical indifference requires: (1) A serious medical need; and (2) A deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met

6

by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Delay which does not cause harm is insufficient to state a claim of deliberate medical indifference. Shapley, 766 F.2d at 407 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1188 (9th Cir. 2002)). Mere indifference, negligence, or medical malpractice is insufficient to support the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). A prisoner may establish deliberate indifference by showing that officials intentionally interfered with his medical treatment for reasons unrelated to the prisoner's medical needs. See Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992); Estelle, 429 U.S. at 105.

Plaintiff's allegations are sufficient to state a serious medical need. Jett, 439 F.3d at 1096 (stating that a "serious medical need" may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'"); McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are

examples of indications that a prisoner has a 'serious' need for medical treatment."). Plaintiff suffers from entropion and alleges he endures "moderate to severe acute pain, redness, irritation, discomfort, and tearing" of his left eye due to the condition. Plaintiff also claims that specialists have recommended surgery to treat the entropion several times. Thus, Plaintiff has established he has a serious medical need.

However, Plaintiff has again failed to show that any Defendants acted with deliberate indifference. While the decision to deny treatment previously recommended by a specialist is sufficient to allege deliberate indifference at the pleading stage, Plaintiff has failed to present facts to suggest that any of the named Defendants were responsible for the decision to deny his treatment referral. As stated above, Plaintiff fails to sufficiently link Defendants Alfaro, Odeluga, or Doe Defendants 1, 2, and 3 to the decision to deny his treatment. Furthermore, nothing in the FAC suggests that Defendant Manavi was responsible for this decision, either. To the contrary, Manavi's suggestion that Plaintiff speak with a lawyer indicates that Manavi was sympathetic to Plaintiff's need but that he was not responsible for making any determination regarding his treatment. Absent further facts, Plaintiff fails to state an Eighth Amendment claim against Defendants.

He will be given further leave to amend.

**D. State Law Claims**

Plaintiff also brings claims for professional negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress under California law.

The Court may exercise supplemental jurisdiction over state law claims in any civil action in which it has original jurisdiction if the state law claims form part of the same case or controversy. 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial . . . the

state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Furthermore, to bring a tort claim under California law, a plaintiff must allege compliance with the California Tort Claims Act ("CTCA"). Under the CTCA, a plaintiff may not maintain an action for damages against a public employee unless he or she has presented a written claim to the state Victim Compensation and Government Claims Board ("VCGCB") within six months of accrual of the action. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. State of California v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240 (2004).

Here, although he states he has filed "multiple" claims to VCGCB, Plaintiff has not alleged cognizable federal claims. Accordingly, the Court will not exercise supplemental jurisdiction over Plaintiff's state law claims. The Court will, however, provide Plaintiff with the legal standards applicable to what appear to be his intended claims in the event he chooses to amend.

A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d). "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)). For claims based on medical malpractice, defendant has a duty "to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise." Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999).

"A cause of action for negligent infliction of emotional distress requires that a plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress." Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (citation omitted).

Finally, to establish a claim for intentional infliction of emotional distress under California law, a plaintiff must show "(1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct." Id.

**E. Plaintiff's Claims for "Deliberately Indifferent Policy, Practice, or Custom"**

Plaintiff's second cause of action is for a "deliberately indifferent policy, practice, or custom." Plaintiff alleges that he was "subjected to the policies, customs, and practices or policy statement, ordinance, regulations or decisions officially adopted and promulgated by [NKSP] and [Warden] Alfaro." Plaintiff links such "policies, customs, and practices" to the denial of his treatment referral, alleging that certain policies (which he does not identify) contributed to the inadequate medical care he alleges.

It is unclear what kind of claim Plaintiff intends to bring here. Previously, Plaintiff was advised by the Court that, to bring official capacity claims, he "must allege that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation." (ECF No. 10 at 5.) However, the Court dismissed plaintiff's official capacity claims because Plaintiff failed to identify any such policy or custom. (Id.) In his FAC, Plaintiff sues Defendants only in their individual capacities but not in their official capacities. (ECF No. 14 at 2.) In any case, this cause of action is subsumed under Plaintiff's first and fourth causes of action, which are predicated on the alleged denial of Plaintiff's treatment referral, for which Plaintiff brings forth allegations of an Eighth Amendment violation for inadequate medical care. Accordingly, the Court

10

considers this cause of action to have been addressed by the Court's Eighth Amendment discussion, above, for which Plaintiff is being given leave to amend.

## V. Conclusion and Order

Plaintiff's FAC fails to state a cognizable claim for relief. The Court will grant Plaintiff **one final opportunity to file an amended complaint**. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). **Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above**.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed for failure to state a claim on which relief may be granted;

2. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his amended complaint, filed March 14, 2017;

3. Within thirty (30) days from the date of service of this Order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this Order or a notice of voluntary dismissal; and

4. If Plaintiff fails to file a second amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to comply with a court order and failure to state a claim, subject to the "three strikes" provision set forth in in 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated: May 30, 2017  /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE